UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NICOLE COBARRUBIA,

Plaintiff,

v.

JEFFERY EDWARDS,

Defendant.

Case No. 4:19-cv-07899-KAW

**AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 34, 39

On December 17, 2020, Defendants County of Alameda and Deputy Jeffrey Edwards filed a motion for summary judgment on the sole remaining cause of action for excessive force pursuant to 42 U.S.C. § 1983.

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, GRANTS IN PART AND DENIES IN PART[1] Defendants' motion for summary judgment.

## I.    BACKGROUND

In May 2016, Plaintiff Nicole Cobarrubia (a/k/a Nicole Resare) was arrested for vandalism and placed on felony probation. (Pl.'s Cobarrubia Dep., Decl. of K. Chike Odiwe, "Odiwe Decl.," Dkt. No. 39-1, Ex. A at 37:9-25.)  Shortly thereafter, Plaintiff was convicted for being a felon in possession of ammunition. *Id.*  On December 1, 2017, Plaintiff failed to appear at a hearing related to her prior convictions in Alameda County Superior Court, Docket No. 468125, and a felony arrest warrant was issued. (Decl. of Kevin Gilbert, "Gilbert Decl.," Dkt. No. 34-3 ¶ 11, Ex. H.)

---

[1] The undersigned files this amendment to the February 19, 2021 summary judgment order, which, in the interest of judicial economy, clarifies the existence of a genuine dispute of material fact which necessarily precludes summary judgment on qualified immunity grounds.

United States District Court
Northern District of California

On December 4, 2017 at approximately 1:00 a.m., Deputies Randy Wilson, Richard Ferrante, and Kristine Amaral, from the Alameda County Sheriff's Department, arrived at Plaintiff's trailer to arrest her after a warrant check revealed that she had an active felony warrant. (Decl. of Randy Wilson, "Wilson Decl.," Dkt. No. 34-5 ¶¶ 3, 5; Decl. of Kristine Amaral, "Amaral Decl.," Dkt. No. 34-6 ¶ 3.)  The trailer was located at the Hacienda Mobile Home Park at 3784 Castro Valley Blvd. in Castro Valley. (Amaral Decl. ¶ 6.)  The trailer was a small, 28.5-foot unit designed to be pulled behind a car or truck. (*See* Defs.' Cobarrubia Dep., Gilbert Decl., Dkt. No. 34-3, Ex. O at 56:5-9.)  In addition to the arrest warrant, Plaintiff was also on searchable probation due to prior convictions. (Decl. of Richard Ferrante, "Ferrante Decl.," Dkt. No. 34-8 ¶ 7.)

Prior to executing the warrant and arresting Plaintiff, Deputies Ferrante and Wilson contacted the Sheriff's Office Dispatch ("Dispatch") to verify the status of the warrant. (Ferrante Decl. ¶ 5.)  In response, Dispatch confirmed that the warrant was still active and outstanding. *Id.* In addition, Dispatch advised that Plaintiff had three recent convictions, including one for being a felon in unlawful possession of ammunition, and that the terms of her probation included a four-way search clause. (Ferrante Decl. ¶¶ 6-7.)  The deputies had prior contacts with Plaintiff, which included a prior occasion of resisting arrest in her trailer while possessing a firearm and ammunition. (Wilson Decl. ¶¶ 4; Ferrante Decl. ¶ 4; Amaral Decl. ¶¶ 4-5.)

The deputies were also aware of Plaintiff's multiple criminal convictions, including having previously been convicted of being a felon in unlawful possession of ammunition, and that she had been charged with unlawfully possessing a stun gun. (Wilson Decl. ¶ 4; Amaral Decl. ¶ 4.) During those prior interactions, Plaintiff was found to have been in possession of knives, which she typically concealed in her boots and clothing. (Amaral Decl. ¶ 4; Defs.' Cobarrubia Dep. at 79:5-16 (admitted to regularly carrying nine knives in her boots, pants, and bra).)  The deputies were also aware of one of Plaintiff's prior arrests at her trailer, where she not only resisted arrest, but also pretended to be asleep in hopes that the officers would leave. (Wilson Decl. ¶ 8.)  After law enforcement forcibly entered Plaintiff's trailer on that occasion, she was arrested for unlawfully possessing a firearm and resisting arrest. *Id.*  Additionally, the deputies were aware that Plaintiff has two recent arrests at her trailer, on February 3, 2017 and October 3, 2017, in which

1    she was found to be in unlawful possession of one or more stun guns. (Wilson Decl. ¶ 9.)  During

2    the October 3, 2017 incident, Plaintiff had attempted to conceal her stun gun in the oven inside of

3    her trailer. *Id.* All of this information was shared with the deputies, including Deputy Edwards,

4    before the deputies entered the trailer. (Wilson Decl. ¶¶ 4, 8, 9, 12; Ferrante Decl. ¶¶ 4, 8, 11;

5    Amaral Decl. ¶¶ 4, 7.)

6          Upon arrival, the deputies observed that the door was firmly closed, but the padlock on the

7    outside was missing. (Wilson Decl. ¶ 11.)  Deputy Wilson observed that Plaintiff had replaced the

8    standard aluminum door with a metal reinforced door, and that the door was secured from the

9    interior, which indicated that Plaintiff was inside. *Id.*

10         The deputies began by performing multiple knock and announcements, in which they

11   advised Plaintiff that there was a warrant for her arrest and directed her to come out peacefully.

12   (Wilson Decl. ¶ 14; Ferrante Decl. ¶ 14.)  For over 15 to 20 minutes, the deputies repeatedly

13   pounded on the door to the trailer with their fists, batons and other tools while announcing that

14   they were with the Alameda County Sheriff's Office. *See ids.* Plaintiff did not come to the door or

15   exit the trailer in response to these announcements, which were loud enough to awaken other

16   residents of the trailer park, some of whom came out to inquire about the noise. (*See ids.*; Amaral

17   Decl. ¶ 10.)  Plaintiff testified that around that time, she was lying in bed after having fallen asleep

18   fully clothed while preparing to go to the store. (Pl.'s Cobarrubia Dep. at 66:7-23.)  At the time

19   she fell asleep, Plaintiff was wearing a sweatshirt, hat, headphones (while listening to music), and

20   boots. *Id.* at 75:22-25; 86:10-18.  During the announcements, while Plaintiff claims to have been

21   sleeping, Deputy Amaral claims that she twice observed Plaintiff looking out the window before

22   closing her curtains. (Amaral Decl. ¶ 8.)  Plaintiff, however, testified that she did not look out the

23   window. (Pl.'s Cobarrubia Dep. at 107:23-25.)

24         Plaintiff did not exit the trailer in response to the announcements, so the deputies requested

25   the assistance of Deputy Edwards and his K9 partner, Grizzly, to assist in entering the trailer to

26   effectuate Plaintiff's arrest. (Wilson Decl. ¶ 15; Decl. of Jeffrey Edwards, "Edwards Decl.," Dkt.

27   No. 34-7 ¶ 4.)  Upon Deputy Edwards's arrival, the other deputies shared the known information

28   relating to the outstanding warrant, Plaintiff's arrests, that she was known to have weapons, her

United States District Court
Northern District of California

1    history of possessing firearms, that she had recently been arrested for possessing a stun gun, and

2    that she had a history of resisting arrest. (Edwards Decl. ¶ 5; Wilson Decl. ¶ 15; Ferrante Decl. ¶

3    13; Amaral Decl. ¶ 12.)  This information was consistent with Deputy Edwards's prior interactions

4    with Plaintiff. (Edwards Decl. ¶ 5.)

5           After meeting with the other deputies to discuss the information known about Plaintiff and

6    the plan for taking her into custody, Deputy Edwards approached the trailer and proceeded to

7    loudly make two separate announcements directing Plaintiff to surrender, and that the failure to

8    comply would result in sending K9 Grizzly into the residence, and that Plaintiff may be bitten.

9    (Edwards Decl. ¶ 15.)

10          When Plaintiff did not comply, the deputies proceeded to pry the door open and remove it

11   from its hinges, which caused a significant racket and shook the trailer. (Wilson Body-worn

12   Camera footage, Wilson Decl. ¶ 16, Ex. Q; Amaral Decl. ¶ 14 (heard loud noise from 20-30 feet

13   away.)  After prying open the door, Deputy Edwards performed further K9 announcements, and

14   had his K9 bark several times, before entering the trailer's living room to search the residence.

15   (Edwards Decl. ¶¶ 19-20; Wilson Decl. ¶ 17.)  When Plaintiff failed to respond to those

16   announcements, Deputy Edwards entered the trailer, following a step behind his K9 and directing

17   it to search the various areas and compartments in the trailer. (Edwards Decl. ¶ 20.)  Deputy

18   Edwards and Grizzly began searching the front living room, and then proceeded through the

19   kitchen area and to the bedroom. (Edwards Decl. ¶¶ 20-23; Edwards Body-worn Camera footage,

20   Edwards Decl. ¶ 20, Ex. U [0:05]; Wilson Decl. ¶ 18.)  Deputy Wilson followed behind them.

21   (Wilson Decl. ¶ 18.)  Despite the relatively small interior of the trailer, an open bathroom door

22   prevented the deputies from having a clear line of sight to the bedroom. (Edwards Decl. ¶ 23.)

23   The trailer was dark with all of the lights off, and Deputy Edwards had only his flashlight.

24   (Edwards Decl. ¶ 22.)  As Deputy Edwards and his K9 neared the bedroom, he adjusted the door

25   to allow his K9 to enter and search the room. (Edwards Decl. ¶¶ 23-24, Ex. U [0:10]; Wilson Decl.

26   ¶ 19.)  At that point, the K9 located Plaintiff, who was fully dressed in a sweatshirt, jeans and

27   boots on the bed with her hands concealed under her body. (Edwards Decl. ¶¶ 24-25, Ex. U [0:18]

28   (Plaintiff not shown on video); Wilson Decl. ¶ 19.)

1    In an attempt to subdue Plaintiff, Deputy Edwards gave his K9 partner a command, after

2    which the K9 bit Plaintiff's left arm through her sweatshirt. (Wilson Decl. ¶ 19; Edwards Decl. ¶

3    28, Ex. U [0:22].)  Plaintiff testified that she woke up only after being bitten by the K9. (Pl.'s

4    Cobarrubia Dep. at 87:4-88:2.)  Deputy Edwards directed Plaintiff to show her hands, but Plaintiff

5    did not comply. (Edwards Decl. ¶ 29, Ex. U [0:24].)  He also directed Plaintiff to "bring my dog to

6    me," and repeated this command, as the K9 is trained to walk on its hind legs so a suspect can

7    walk back to the handler with the K9 still engaged. (Edwards Decl. ¶ 30, Ex. U [0:32].)  Plaintiff

8    did not comply with these commands but responded by yelling at Deputy Edwards to get the dog

9    off of her. *See ids.*  Plaintiff proceeded to attack the K9, including repeatedly kicking and hitting

10   him. (Edwards Decl. ¶ 33.)  To prevent further battery of the K9, Deputy Edwards climbed on the

11   bed and attempted to grab Plaintiff's right hand, but Plaintiff pulled away. (Edwards Decl. ¶ 36.)

12   Deputy Edwards continued to command that Plaintiff put her hands behind her back for

13   handcuffing, but she responded that she was unable to do so because the K9 was "ripping [her] …

14   arm off." (Edwards Decl. ¶ 37, Ex. U [2:11].)  Deputy Edwards then delivered two distraction

15   blows with his left elbow to the side of Plaintiff's face, but that did not appear to have any effect.

16   (Edwards Decl. ¶ 38.)  Deputy Edwards finally subdued Plaintiff's right arm behind her back.

17   (Edwards Decl. ¶ 39, Ex. U [2:44].)  Deputy Wilson then took control of Plaintiff's right arm, and

18   Deputy Edwards pulled Plaintiff's left arm back enough to permit Deputy Wilson to take control

19   of it. (Edwards Decl. ¶ 40.)  At that point, Deputy Edwards took control of the K9 and had him

20   release his bite hold. *Id.*  Plaintiff would not put her hands behind her back for handcuffing, so

21   Deputy Wilson pulled her into the main living area because it allowed for better positioning to

22   place her in handcuffs. (Edwards Decl. ¶ 41.)  After Plaintiff was restrained in handcuffs, deputies

23   located a seven-inch long folding knife that Plaintiff had concealed in her bra. (Amaral Decl. ¶ 17,

24   Ex. T.)  Plaintiff was also confirmed to have been wearing steel-toed boots. (Gilbert Decl., Ex. K

25   at 10:22-26 (RFA No. 38, Gilbert Decl. ¶ 14, Ex. K at 10 (admitted to wearing steel-toed boots).)

26   Plaintiff was taken to Eden Medical Center, where she was treated for lacerations to her

27   left eye and face, and the anterior and posterior of her left arm. (Pl.'s Dep. of Amber Jones, Odiwe

28   Decl., Ex. F at 11:2-6, 17:8-14.)

United States District Court
Northern District of California

5

On December 8, 2017, the Alameda County District Attorney charged Plaintiff with two counts of violating her probation during the incident. (Decl. of Assistant District Attorney Roy Scheingart, "Scheingart Decl.," Dkt. No. 34-1 ¶¶ 2-5, Ex. A.)  Specifically, Plaintiff was charged with one count of resisting a peace officer, in violation of California Penal Code § 148, and one count of battery upon a police K9, in violation of California Penal Code § 600(a). (Scheingart Decl., Ex. A at 1.)  On June 5, 2018, Plaintiff admitted to these violations. (Decl. of Deputy District Attorney Matthew Gaidos, "Gaidos Decl.," Dkt. No. 34-2 ¶¶ 2-10, Ex. E; Gilbert Decl., Exs. F and I.)  The Court sentenced Plaintiff to serve 270 days in jail. (Gaidos Decl. ¶ 9, Ex. E at 2.)

On December 2, 2019, Plaintiff Nicole Cobarrubia filed this civil rights lawsuit alleging four causes of action against the County of Alameda and Deputy Jeffrey Edwards. (Compl., Dkt. No. 1.)  The parties stipulated to the dismissal of the first, third, and fourth causes of action, which were entered by the Court on December 18, 2020. (Dkt. Nos. 35 & 36.)  Thus, only the second cause of action against Defendant Edwards remains.

On December 17, 2020, Defendants filed a motion for summary judgment. (Defs.' Mot., Dkt. No. 34.)  On December 31, 2020, Plaintiff filed an opposition. (Pl.'s Opp'n, Dkt. No. 39.) On January 7, 2021, Defendants filed a reply. (Defs.' Reply, Dkt. No. 44.)  On January 26, 2021, the Court issued an order requiring Plaintiff to file court reporter certificates for the depositions attached to Plaintiff's counsel's declaration in support of the opposition. (Dkt. No. 48.)  On January 26, 2021, Plaintiff's counsel filed a supplemental declaration with the certificates attached, which authenticated the deposition excerpts. (Dkt. No. 49, Exs. A-C.)

## II.    LEGAL STANDARD

### A.    Motion for Summary Judgment

A party may move for summary judgment on a "claim or defense" or "part of... a claim or defense." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,*

United States District Court
Northern District of California

477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, it may discharge its burden of production by either (1) by "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250.  "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment. *Anderson,* 477 U.S. at 254.  "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted).  The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,*

1   477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

2   **B.    Request for Judicial Notice**

3       A district court may take notice of facts not subject to reasonable dispute that are "capable

4   of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

5   questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir.

6   1993).  "[A] court may take judicial notice of 'matters of public record.'" *Lee v. City of Los*

7   *Angeles,* 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279,

8   1282 (9th Cir. 1986)).

9                    **III.    DISCUSSION**

10  **A.    Request for Judicial Notice**

11      As a preliminary matter, Defendants ask that the Court take judicial notice of a number of

12  documents in support of its motion for summary judgment. (Defs.' Req. for Judicial Not., "Defs.'

13  RJN," Dkt. No. 34-9.)  The documents are purportedly true and correct copies of: A) Petition to

14  Revoke Plaintiff's Felony Probation filed with the Alameda County Superior Court, Docket No.

15  468125, on December 8, 2017; B) Petition to Revoke Plaintiff's Felony Probation filed with the

16  Alameda County Superior Court, Docket No. 468125, on October 26, 2017; C) Petition to Revoke

17  Plaintiff's Felony Probation filed with the Alameda County Superior Court, Docket No. 468125,

18  on April 13, 2018; D) Petition to Revoke Plaintiff's Felony Probation filed with the Alameda

19  County Superior Court, Docket No. 468125, on April 16, 2018; E) Minute Order dated June 5,

20  2018 in Alameda County Superior Court, Docket No. 468125; F) Transcript of Proceedings in

21  Alameda County Superior Court, Docket No. 468125, on June 5, 2018; G) Criminal Complaint

22  and consequent Record of Conviction and Sentencing for Plaintiff in Alameda County Superior

23  Court, Docket No. 468125; H) Minute Order in Alameda County Superior Court, Docket No.

24  468125, dated December 1, 2017; I) All Minute Orders in Alameda County Superior Court,

25  Docket No. 468125, between, but not including, December 1, 2017 and June 5, 2018. (Defs.' RJN

26  at 1-2.)

27          Plaintiff does not oppose the request for judicial notice.

28          Exhibits A through I are true and correct copies of court records related to Plaintiff's

*United States District Court*
*Northern District of California*

8

1   probation revocation and the incident that gave rise to the instant litigation, so the Court will take

2   judicial notice of the court records. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *see*

3   *also McCurdy v. Davey*, No. 16-00696 BLF (PR), 2020 WL 43110, at \*5 n. 1 (N.D. Cal. Jan. 2,

4   2020) (judicial notice of state court docket and filings pertaining to probation revocation

5   appropriate).

6          Accordingly, the Court GRANTS Defendants' request for judicial notice as to the

7   documents only.  Defendants' request for the Court to take judicial notice of certain facts as being

8   true, however, is DENIED. (*See* Defs.' RJN at 3-6.)

9          **B.   Motion for Summary Judgment**

10         Defendants argue that summary judgment is appropriate for three reasons: 1) the remaining

11   claim is barred by *Heck v. Humphrey,* 512 U.S. 477 (1994), due to Plaintiff's probation

12   revocation; 2) the force used was reasonable; and 3) that Deputy Edwards is entitled to qualified

13   immunity. (Defs.' Mot. at 13, 15, 22.)

14         **i.   Whether the remaining claim is barred by the *Heck* doctrine.**

15         Defendants argue that Plaintiff's probation revocation on June 5, 2018, which was based

16   on charges of violating Penal Code §§ 148 (resisting arrest) and 600 (battery upon a police canine)

17   during the subject incident, preclude Plaintiff's claim of excessive force under *Heck v. Humphrey*,

18   512 U.S. 477 (1994). (Defs.' Mot. at 13.)

19         In *Heck*, the Supreme Court limited a plaintiff's ability to bring a claim under § 1983 when

20   it calls the lawfulness of a criminal conviction into question. 512 U.S. at 487.  If a plaintiff's

21   conviction for violating section 148(a) has not been reversed, expunged, declared invalid, or called

22   into question by the issuance of a writ of habeas corpus, she cannot pursue her § 1983 excessive

23   force claim if it is based on theories that "necessarily imply the invalidity of [their] convictions or

24   sentences." *See id*.  "In evaluating whether claims are barred by *Heck*, an important touchstone is

25   whether a § 1983 plaintiff could prevail only by negating 'an element of the offense of which

26   [they have] been convicted.'" *Cunningham v. Gates*, 312 F.3d 1148, 1154 (9th Cir. 2002) (citing

27   *Heck*, 512 U.S. at 487 n.6)).

28         a.   The basis for Plaintiff's conviction is clear.

1    In opposition, Plaintiff argues that the *Heck* doctrine does not bar her claim, because the

2    basis for her June 5, 2018 conviction is not clear. (Pl.'s Opp'n at 18-19.)  The Court disagrees.

3    As an initial matter, a probation revocation constitutes a "conviction or sentence" for the

4    purposes of the *Heck* doctrine. *See Farhat v. California Dep't of Justice*, No. 18-06233 BLF (PR),

5    2019 WL 359415, at *2 (N.D. Cal. Jan. 28, 2019) (citing *Jackson v. Vannoy*, 49 F.3d 175, 177

6    (5th Cir. 1995); *Baskett v. Papini*, 245 Fed. Appx. 677, 678 (2007) (affirming dismissal of § 1983

7    claim as *Heck*-barred because allegations called into question validity of probation revocation).

8    Here, Plaintiff's probation was revoked, and she was sentenced to county jail after

9    admitting to various violations of her probation, which included violations of Penal Code §§ 148

10   and 600. (*See* 6/5/18 Minute Order, Gaidos Decl. ¶¶ 2, 4-9, Ex. E.)  The court records from her

11   criminal case, along with the supporting declarations of Assistant District Attorney Roy

12   Scheingart and Deputy District Attorney Matthew Gaidos, show that Plaintiff was charged with

13   violations of Penal Code §§ 148 and 600(a) on December 4, 2017 through the filing of the

14   "Petition to Revoke Felony Probation." (Petition, Scheingart Decl., Ex. A at 1.)  The face of the

15   Petition indicates that the District Attorney decided to pursue revocation of Plaintiff's probation

16   rather than charging her separately in a new criminal proceeding. (Scheingart Decl. ¶ 5, Ex A

17   (petition says "not charged").)  The declaration from Deputy Randy Wilson regarding the incident

18   was attached to the Petition. (Scheingart Decl., Ex. A at 2.)[2]  On December 8, 2017, Plaintiff was

19   arraigned on the Petition, advised of her rights, and given a copy of the Petition and the police

20   reports supporting the factual basis for this Petition. (12/8/17 Minutes, Gilbert Decl., Ex. I.)  At no

21   time was this Petition withdrawn or dismissed, and minutes from the subsequent court

22   appearances show that she was regularly appearing in court on the Petition. (Gaidos Decl. ¶ 2;

23   Minutes, Gilbert Decl., Ex. I.)  The minute order from May 24, 2018 indicated that the next

24   hearing was set for June 5, 2018. (Gilbert Decl., Ex. I at 27-28.)

25   On June 5, 2018, the Petition came on for hearing and Plaintiff admitted to the violations

26

27   [2] The District Attorney filed three other petitions to revoke Plaintiff's probation for violations
     from dates other than the subject incident, which were signed and issued on October 26, 2017,
28   April 13, 2018, and April 16, 2018. (Scheingart Decl. ¶¶ 6-8, Exs. B-D.)  As with the Petition at
     issue, the District Attorney declined to separately charge the conduct. *See ids.*

United States District Court
Northern District of California

1    in this Petition and the three other pending petitions and waived her right to any further hearing.

2    (6/5/18 Tr., Gilbert Decl., Ex. F at 2:1-23; Gaidos Decl. ¶ 6.)  At no point during the hearing did

3    Plaintiff or her counsel limit her pleas, admissions, and waivers to only some of the violations

4    charged. (Gaidos Decl. ¶ 6; *see, generally,* 6/5/18 Tr., Gilbert Decl., Ex. F.)  The Court found the

5    Plaintiff in violation of her probation and sentenced her to 270 days in county jail. (6/5/18 Minute

6    Order, Gaidos Decl. ¶ 9, Ex. E at 2.)

7         Deputy Wilson's declaration of probable cause, which was attached to the Petition, does

8    not clearly distinguish between the factual bases behind the charge for resisting arrest and the

9    charge for battery on a police canine. (*See* Scheingart Decl., Ex. A at 2.)  The fact that Plaintiff

10   admitted to the charges in the Petition, including a section 148(a)(1) charge, "does not

11   automatically imbue every aspect of the officers' conduct during the [] encounter with an

12   irrebuttable presumption of lawfulness." *Kyles v. Baker*, 72 F. Supp. 3d 1021, 1037 (N.D. Cal.

13   2014).  While Plaintiff presumably resisted arrest for more than 20 minutes by refusing to exit the

14   trailer when the announcements were made, the allegations that she was resisting arrest while

15   being bitten for three minutes is not irrebuttable.  Deputy Wilson's declaration provides that:

16            Several attempts were made to get Resare to step out of her residence,
               but she refused. Her door was removed/pried from its hinges and more
17            K9 announcements were made, but she still refused to comply. ACSO
               K9, Grizzly, located Resare on her bed where she still refused to
18            comply. While Grizzly had a bite-hold to Resare['s] upper left arm,
               Resare was actively kicking and punching Grizzly until we were able
19            to place her in handcuffs.

20   (*See* Scheingart Decl., Ex. A at 2.)  Viewing the evidence in the light most favorable to the

21   nonmoving party, the Court finds that it is reasonable to infer that the subsequent conviction for §

22   148 was for the refusal to surrender to the deputies prior to being bitten by the K9, and that the

23   conviction for the violation of § 600(a) was for battery on the K9 after the initial bite-hold. *See*

24   *Kyles,* 72 F. Supp. 3d at 1038; *see also* Scheingart Decl., Ex. A at 2.

25        Accordingly, the factual basis for Plaintiff's probation revocation is generally clear, and

26   her remaining cause of action may be barred by the *Heck* doctrine.

27                 b.   At least part of Plaintiff's claim is *Heck* barred.

28        Plaintiff was convicted for violating her probation during the incident.  As discussed

United States District Court
Northern District of California

11

1   above, she was convicted for resisting a peace officer in violation of Penal Code § 148, and for

2   battering a police K9 in violation of California Penal Code § 600(a).  A violation of § 600(a)

3   requires that the K9 was acting in the lawful discharge of its duties and that the battery occur

4   "willfully and maliciously and with no legal justification". Cal. Penal Code § 600; *see also People*

5   *v. Adams*, 124 Cal. App. 4th 1486, 1492 n. 4 (2004).  Thus, at the very least, Plaintiff cannot claim

6   that Deputy Edwards's deployment of the K9 was excessive force, because that is contrary to the

7   "lawful performance" element of Plaintiff's conviction for a violation of § 600(a), and would

8   imply that the conviction was invalid.  *See Adams*, 124 Cal. App. 4th at 1494 n. 8.

9          Similarly, a violation of Penal Code § 148 requires that the peace officers be in lawful

10   performance of their duties. Cal. Pen. Code § 148; *see, e.g., Beets v. Cty. of Los Angeles*, 669 F.3d

11   1038, 1046 (9th Cir. 2012).  Thus, Plaintiff's conviction for resisting arrest precludes a claim

12   based on some force used in subduing Plaintiff, such as entering the trailer and the deployment of

13   the K9.  The Court, however, need not address whether this conviction acts as a bar, because

14   Plaintiff's excessive force claim is effectively limited to the dog bite, and any claim involving the

15   initial bite is barred by the *Heck* doctrine. *See* discussion, *infra,* Parts III.B.i.c., III.B.ii.

16          c.   Whether the duration of the bite constitutes excessive force is not barred.

17          Plaintiff argues that the allegations of excessive force are distinct temporally from the

18   conduct leading to her arrest, and are, therefore, not entirely barred. (Pl.'s Opp'n at 22.)  In her

19   disjointed opposition, Plaintiff first argues that the duration of the bite, which lasted several

20   minutes, could be found excessive without invalidating her conviction. (Pl.'s Opp'n at 18.)

21   Plaintiff later contends that she was effectively under arrest long before Deputy Edwards's use of

22   force, so the deployment of the canine was itself excessive. *Id.* at 22.  The second argument is

23   unavailing, because Plaintiff was convicted of battery on the K9 without legal justification, so the

24   deployment was lawful. Cal. Penal Code § 600; *see also Adams*, 124 Cal. App. 4th at 1492 n. 4.

25          The first argument that the duration was excessive, however, has merit.  If the allegation of

26   excessive force is "distinct temporally or spatially from the factual basis of the person's

27   conviction," the allegation would not be barred by *Heck* so long as the use of force occurred after

28   the conduct on which the conviction was based. *Beets*, 669 F.3d at 1043 (quoting *Smith v. City of*

United States District Court
Northern District of California

1    *Hemet*, 394 F.3d 689, 698-99 (9th Cir. 2005) (en banc)).  Here, the sequence of events was that the

2    canine was first deployed to bite Plaintiff, and then it continued to hold its bite for more than three

3    minutes.  While the initial bite is clearly subject to *Heck* bar, the duration of the bite after Plaintiff

4    battered the K9 would not necessarily be barred, because the initial bite and the three-minute

5    duration are distinct temporally. *See* discussion, *supra*, Part III.B.i.b.  Here, it is undisputed that

6    Plaintiff was not handcuffed until after the K9 released his bite. (*See* Edwards Decl. ¶¶ 40-41.)  It

7    could, therefore, be inferred that the bite was longer than necessary to subdue Plaintiff, such that a

8    jury could find the duration excessive.

9        Thus, while the Court finds that the deployment of the K9 to bite Plaintiff is barred due to

10   her probation revocation, Plaintiff's claim that the duration of the bite-hold was excessive is not

11   barred.

12       **ii.   Whether the force used was excessive**

13       Plaintiff alleges that Deputy Edwards used excessive force by both punching her and by

14   deploying the K9, and for commanding the K9 to continue to bite her, in an effort to affix

15   handcuffs. (*See* Compl. ¶ 10.)

16           a.   Whether punching Plaintiff was reasonable.

17       Defendants argue that Edwards's use of "distraction blows" was reasonable. (Defs.' Mot.

18   at 22.)  Plaintiff does not address this argument in her opposition, and instead focuses on the

19   reasonableness of commanding the K9 to bite her.  Thus, any argument that the distraction blows

20   administered by Deputy Edwards constituted excessive force is waived.

21       Accordingly, summary judgment is granted as to the allegation that punching Plaintiff was

22   excessive force.

23           b.   Whether the use of the K9 to arrest Plaintiff was reasonable.

24       As discussed above, any claim that the deployment of the K9 constituted excessive force is

25   barred by the *Heck* doctrine. *See* discussion, *supra* Part III.B.i.  Thus, the only issue is whether the

26   duration was excessive.

27       In the motion, Defendants argue that the use of the K9 to arrest Plaintiff was reasonable,

28   because Deputy Edwards reasonably believed that Plaintiff was a "dangerous felon with a weapon

United States District Court
Northern District of California

13

1   who was willfully disobeying his commands." (Defs.' Mot. at 20.)

2          In opposition, Plaintiff contends that the duration was excessive. (Pl.'s Opp'n at 7.)  In

3   support of her position, Plaintiff relies on the opinion of her expert, Ernest Burwell, who was a

4   canine handler for twenty years with the Los Angeles County Sheriff's Department, during which

5   time he apprehended more than 425 suspects using a canine. (Ernest Burwell's Rule 26 Report,

6   "Burwell Report," Odiwe Decl. ¶ 6, Ex. E at 2-3.)  Mr. Burwell discusses the incident and

7   furnishes the opinion that the duration of the K9's bite was longer than necessary to take Plaintiff

8   into custody. (Burwell Report at 13-14.)

9          Even with the benefit of the body-worn camera footage, the Court cannot determine

10  whether the duration of the bite was excessive.  The Ninth Circuit has found that the use of a

11  police dog constituted excessive force when the canine was sicced on the suspect multiple times

12  beyond what was necessary to subdue the suspect. *See Lowry v. City of San Diego*, 858 F.3d 1248,

13  1257 (9th Cir. 2017) (citing *Smith v. City of Hemet*, 394 F.3d 689, 701-02 (9th Cir. 2005); *Chew v.*

14  *Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994)).

15         Even though this case involved a single bite, when resolving all disputes in Plaintiff's

16  favor, the Court finds that a rational jury would not be required to decide that having Grizzly

17  continue to bite Plaintiff for three minutes was reasonable given that the K9 removed his bite

18  before she was successfully handcuffed.  Accordingly, Defendants' motion for summary judgment

19  on the second cause of action must be denied in part.

20         **C.    Whether Deputy Edwards is entitled to qualified immunity.**

21          In the alternative, Defendants contend that Deputy Edwards is entitled to summary

22  judgment based on qualified immunity. (Defs.' Mot. at 22-23.)  "The doctrine of qualified

23  immunity protects government officials from liability for civil damages insofar as their conduct

24  does not violate clearly established statutory or constitutional rights of which a reasonable person

25  would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (internal quotations omitted).

26  "Thus, qualified immunity is a defense either if the plaintiff fails to make out a violation of a

27  constitutional right or if the alleged violated right was not clearly established at the time of

28  defendant's alleged misconduct." *Scocca v. Smith*, 912 F. Supp. 2d 875, 887 (N.D. Cal. 2012)

United States District Court
Northern District of California

14

1   (internal quotations omitted).

2         Ultimately, Defendants' qualified immunity arguments are based on their argument that

3   Deputy Edwards did not violate Plaintiff's rights, because she has a history of resisting arrest and

4   possessing weapons. (Defs.' Mot. at 23-24.)  It is undisputed that Plaintiff was lying on the bed at

5   the time she was bitten, and that Deputy Edwards climbed onto the bed and attempted to grab

6   Plaintiff's right hand but he was unable to secure it and affix handcuffs. (Edwards Decl. ¶ 36.)

7   Plaintiff testified that she was not resisting the handcuffing; rather, she put her right hand into the

8   K9's mouth in an attempt to reduce the damage to her left arm. (*See* Pl.'s Cobarrubia Dep. at 94:8-

9   95:2, 105:18-23.)  It was this pain, which Plaintiff testified was worse than "natural childbirth,"

10  that prevented her from being handcuffed, because she was trying to stop "the dog from ripping

11  [her] [left] arm off." *Id.* at 194:11-17, 195:3-16.  Plaintiff argues that her inability to move or flee,

12  which is reflected in the body-worn camera footage, and the fact that Deputies Edwards and

13  Wilson were subduing her face down on the bed, should have resulted in the K9 releasing his bite

14  sooner. (Pl.'s Opp'n at 17.)  Thus, as discussed above, there is a genuine dispute of material fact as

15  to whether the duration of the dog bite was excessive or that the continued bite was required to

16  handcuff her, which is not clearly disposed of by the video recordings presented to the Court. *See*

17  discussion, *supra*, Part III.B.ii.b.  Because there remains a factual dispute that cannot be decided

18  by the Court on a motion for summary judgment, the Court cannot find that Deputy Edwards is

19  entitled to qualified immunity.  *See Foster v. City of Oakland*, 675 F. Supp. 2d 992, 1005 (N.D.

20  Cal. 2009) (finding that because "[i]mportant disputes of material fact as to what actually

21  happened during the incident in question remain unresolved . . . the court cannot make a ruling at

22  this time on the qualified immunity issue").

23         Moreover, it has been clearly established for more than twenty years that the "excessive

24  duration of [a canine] bite [or] improper encouragement of a continuation of [an] attack by officers

25  could constitute excessive force that would be a constitutional violation." *Hartsell v. Cty. of San*

26  *Diego*, 802 F. App'x 295, 296 (9th Cir. 2020) (quoting *Watkins v. City of Oakland*, 145 F.3d 1087,

27  1093 (9th Cir. 1998) (internal quotations omitted); *see also Sweiha v. Cty. of Alameda*, No. 19-cv-

28  03098-LB, 2021 WL 292517, at *5 (N.D. Cal. Jan. 28, 2021) (citations omitted) (Deputy Edwards

United States District Court
Northern District of California

15

1    denied qualified immunity due to a factual dispute.).  The cases cited by Defendants generally

2    pertain to locating concealed suspects, whose locations were unknown at the time canine was

3    dispatched. (*See* Defs.' Mot. at 23-24.)  While Plaintiff was initially concealed, the initial bite is

4    *Heck*-barred, but if it were not, Deputy Edwards would undoubtedly be immune from an excessive

5    force claim involving the initial bite due to the circumstances of this case. *See* discussion, *supra,*

6    Part IIIB.i.b.  That said, this case is factually distinct from *Mendoza v. Block*, which involved a

7    presumably armed bank robber evading arrest by hiding in bushes on private property. 27 F.3d

8    1357 (9th Cir. 1994).  In that case, the Ninth Circuit found that, "[u]sing a police dog to find

9    Mendoza, and to secure him until he stopped struggling and was handcuffed, was objectively

10   reasonable under these circumstances." *Id.* at 1363.  Notably, the *Mendoza* court recognized that

11   some uses of a police canine may become unlawful. *Id.* at 1362.  Here, Plaintiff was arguably

12   secured when Deputy Edwards pinned her to the bed and had her right arm behind her back—her

13   left arm was subject to the K9's bite hold— but Deputy Edwards did not command Grizzly to

14   release his bite for almost 40 more seconds. (*See* Edwards Decl., Ex. U [2:44-3:23].)  Construing

15   the facts in the light most favorable to Plaintiff, the continued use of the canine bite hold once

16   Plaintiff's right arm was subdued was not objectively reasonable, which precludes qualified

17   immunity.

18        For these reasons, Deputy Edwards is not entitled to qualified immunity.

19        **D.    Defendants' objections to Plaintiff's evidence**

20        Finally, Defendants raise two objections to the evidence presented by Plaintiff in support

21   of her opposition. (Defs.' Obj., Dkt. No. 44-1 at 1.)

22             **i.    Plaintiff's testimony regarding her neighbor's statements**

23        First, Defendants object to Plaintiff's deposition testimony about her neighbor's statements

24   that he found fat from her arm after the incident. (Defs.' Obj. at 1.)  Defendants object on the

25   grounds that such statements are hearsay. *Id.*  The Court agrees and sustains this objection.

26             **ii.    Burwell expert report**

27        Second, Defendants object to the entire expert report from Ernest Burwell. (Defs.' Obj. at

28   1-2.)  While the Court finds portions of Mr. Burwell's report inadmissible, namely Mr. Burwell's

United States District Court
Northern District of California

United States District Court
Northern District of California

1   irrelevant employment records beyond his CV, the Court finds the portion of the report regarding

2   his opinion that the duration of the bite was excessive is admissible.  Specifically, Mr. Burwell

3   opines that "[t]he type, degree, and duration of the force was not necessary to take Nicole into

4   custody." (Burwell Report at 11.)  He then explains that the three minutes and seven seconds was

5   "the longest bite [he has] ever seen in [his] 20 years as a canine handler and 15 years as a canine

6   expert[.]" (Burwell Report at 14.)  Mr. Burwell then discusses the Alameda County Sheriff's use

7   of force matrix, and the Department's policy on using police service canines, particularly the

8   requirement that "[t]he handler must immediately call off the canine when the deputy is able to

9   control the suspect or the suspect surrenders." *Id.* at 16-18. Mr. Burwell then opines that, based on

10  Department policy, if Deputy Edwards believed that Plaintiff was a threat, it was unsafe for him to

11  climb on the bed with her and deliver the punches. *Id.* at 18. The Court finds that Mr. Burwell

12  adequately explained the factual basis of his opinion that the bite-hold was longer than necessary

13  to take Plaintiff into custody.

14          Thus, Defendants' objection to Mr. Burwell's report is sustained in part and overruled in

15  part.[3]

16                                  **IV.    CONCLUSION**

17          For the reasons set forth above, Defendants' motion for summary judgment is GRANTED

18  IN PART AND DENIED IN PART, such that the only remaining question for the jury is whether

19  the duration of the K9's bite-hold constitutes excessive force.

20          IT IS SO ORDERED.

21  Dated: February 25, 2021

22                                          _____
                                            KANDIS A. WESTMORE
23                                          United States Magistrate Judge

24

25

26  _____

27  [3] Mr. Burwell's report does not suffer from the same deficiencies that led the court in *May v. San Mateo Cty.*, No. 16-CV-00252-LB, 2017 WL 2305160, at *8 (N.D. Cal. May 26, 2017), to exclude the portion of his opinion that a police-dog bite is the "greatest level of non-lethal force." (*See* Defs.' Obj. at 3.) Indeed, he makes no such claim in his Rule 26 report in this case.

28