UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE COBARRUBIA,<br><br>Plaintiff,<br><br>v.<br><br>JEFFERY EDWARDS,<br><br>Defendant. | Case No. 4:19-cv-07899-KAW<br><br>**ORDER FOLLOWING PRETRIAL CONFERENCE; ORDER REGARDING MOTIONS IN LIMINE**<br><br>Re: Dkt. Nos. 68, 74, 87 |

The Court held a pretrial conference in this case on September 15, 2021. This order memorializes the Court's rulings issued from the bench, as well as those taken under submission, on the motions in limine and other matters before the Court.

## I. PLAINTIFF'S OBJECTIONS TO THE JOINT PRETRIAL STATEMENT

On August 31, 2021, Plaintiff filed an objection to the joint pretrial statement. (Dkt. No. 87.) Plaintiff is objecting to facts that were identified as being undisputed in the joint pretrial statement that Plaintiff's counsel, DeWitt M. Lacy, signed. (*See id.* at 3-4; *cf.* Joint Pretrial Statement, "JPS," Dkt. No. 65 at 3-4, 16.) Regardless, these facts were deemed undisputed in the amended summary judgment order, filed on February 25, 2021 (MSJ Order, Dkt. No. 56). In the interest of clarity, Plaintiff is precluded from introducing evidence, or seeking recovery, for any injuries incurred from Defendant's use of distraction blows, because she abandoned the claim that the distraction blows were an excessive use of force. (MSJ Order at 13; *see also* Order Denying Pl.'s Mot. for Leave to File Mot. for Reconsideration, Dkt. No. 63 at 4.)

At the pretrial conference, Plaintiff's counsel explained that the objection was regarding the terminology, because he believed that the undisputed facts could be more neutrally phrased. The Court understands Plaintiff's position but notes that some of those facts are likely subject to

exclusion. *See* discussion, *infra,* Part III.C.  Thus, Plaintiff's objection is OVERRULED.

## II. STIPULATED FACTS

Notwithstanding the Court's overruling of Plaintiff's objections to the undisputed facts contained in the joint pretrial statement, the parties are ordered to meet and confer and stipulate to a list of undisputed facts that contain neutral language that could be read to the jury.  The parties shall file their stipulation on or before **September 21, 2021**.  Additionally, the parties shall send a copy of the stipulation in Word (.docx) format to kawpo@cand.uscourts.gov.  If the parties are unable to agree on all language, they shall (1) provide the language on which they do agree, and (2) each party shall provide alternate language to the undisputed facts to which they do not agree.  The Court will then either choose one of the options provided or fashion its own language.

To assist the parties in drafting, the Court has finalized Question No. 2 on the verdict form and has decided to use "relevant timeframe" instead of "limited timeframe."  Additionally, on Question Nos. 2 and 6, the Court will use the term "injuring" in lieu of "striking," because any malicious conduct with the K9 is a legal injury under California Penal Code § 600(a), and the phraseology in the charging document is not dispositive of this issue.

## III. MOTIONS IN LIMINE

Plaintiff[1] has filed four motions in limine, and Defendant has filed five. (Pl.'s Mots. in Limine, "Pl.'s MIL," Dkt. No. 74; Def.'s Mots. in Limine, "Def.'s MIL," Dkt. No. 68.)  In addition, Defendant raised an objection to the scope of testimony from Plaintiff's treating physician, which will be treated as a motion in limine. (*See* Dkt. No. 88 at 1.)

### A. Plaintiff's MIL No. 1: To exclude Defendant's expert Don S. Cameron

Plaintiff seeks to exclude[2] Defendant's expert Don Cameron under Federal Rule of Evidence 702 on the grounds that he does not have any training or experience in the handling of

---

[1] The Court notes that Plaintiff's motions appear to be boilerplate, and do not necessarily discuss facts in the instant case. At least one motion in limine appears to refer to a different plaintiff. Similarly, Plaintiff's trial brief appears to be a "cut and paste" job from another lawsuit involving different parties. (*See* Dkt. No. 78.) Additionally, the trial brief Plaintiff lodged via email with the Court was from an unrelated case in the U.S. District Court for the Eastern District of California.

[2] Alternatively, Plaintiff seeks to limit Mr. Cameron's testimony, but she did not identify what limitations the Court should impose. (*See* Pl.'s MIL at 4-5.) Thus, the Court will only consider whether Mr. Cameron should be entirely excluded from testifying.

1  police K9s. (Pl.'s MIL at 4-5.)  Plaintiff provided excerpts of Mr. Cameron's deposition
2  testimony, which include testimony that, while admittedly he was never a K9 handler, he is a
3  certified Peace Officer Standards and Training ("POST") instructor who trains officers about the
4  various force options available to him, including the use of K9s. (Cameron Dep., Decl. of Chike
5  Odiwe, Dkt. No. 80, Ex. B at 23:12-23:9.)  Mr. Cameron testified that, like training on the use of
6  TASERs and pepper spray, he instructs on how a K9 is used as an intermediate level of force.
7  (Cameron Dep. at 24:1-17.)  Mr. Cameron further testified that, in teaching the officer safety and
8  the advanced officer safety trainings over the past 10 years, he has been bitten by a police K9 an
9  estimated 20-30 times during demonstrations with a K9 handler. (Cameron Dep. at 24:18-25.)

10  In determining whether expert testimony is admissible under Federal Rule of Evidence
11  702, the district court is charged with performing "a preliminary assessment of whether the
12  reasoning or methodology underlying the testimony is scientifically valid and whether that
13  reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow*
14  *Pharms., Inc.*, 509 U.S. 579, 592-93 (1993).  This inquiry is "a flexible one," and "[i]ts
15  overarching subject is the scientific validity – and thus the evidentiary relevance and reliability –
16  of the principles that underlie a proposed submission.  The focus, of course, must be solely on
17  principles and methodology, not on the conclusions that they generate." *Id.* at 594-95.

18  In opposition, Defendant argues that Mr. Cameron is a certified trainer for peace officers in
19  all force options, including the use of K9s. (Def.'s Opp'n MIL, Dkt. No. 90 at 1.)  Furthermore,
20  Defendant cites to the fact that Mr. Cameron was one of the authors of the POST Learning
21  Domain 20, which enunciates the standards for the use of force. *Id.*  Defendant contends that
22  "[t]he issue for trial is not the K9's training and the manner of the bite-hold, but rather the
23  reasonableness of the force used during the subject incident, which includes the use of a K9." *Id.*
24  The Court agrees and finds that Mr. Cameron is qualified to testify as a use of force expert, and
25  that he is qualified to testify as to the reasonableness of the duration of the K9's bite.

26  At the pretrial conference, Plaintiff stated that she no longer objected to Mr. Cameron's
27  testimony, and essentially withdrew her motion.

28  Accordingly, the Court DENIES Plaintiff's motion to exclude Mr. Cameron's testimony.

**B. Plaintiff's MIL No. 2: To exclude Defendant's unretained expert Dave Reaver**

Plaintiff moves to exclude Defendant's unretained K9 expert Dave Reaver on the grounds that he was improperly designated as an unretained expert. (Pl.'s MIL at 6.) Plaintiff argues that the disclosure was inadequate because it did not "disclose the facts and opinions that Mr. Reaver will testify about." *Id.* Defendants County of Alameda and Edwards served their initial disclosure of expert witnesses on November 6, 2020, which stated that:

> Mr. Reaver has been involved in training of police and sport dogs for over forty years. He started Adlerhorst [International, LLC] in 1976. Mr. Reaver has extensive experience in training service dogs and their handlers and served as a reserve police officer for twenty years. Mr. Reaver is anticipated to provide testimony regarding the training provided to the K9 and/or his partner (Deputy Edwards) involved in the incident giving rise to this litigation as well as the use of K9s to assist law enforcement officers.

(*See* Pl.'s MILs, Ex. C, Dkt. No. 80-3 at 1-2.)

Not all experts are required to prepare a written report. Rule 26(a)(2)(B) requires that an expert provide a report "if [he] is ... retained or specially employed to provide expert testimony in the case or [his] duties as the party's employee regularly involve giving expert testimony." *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1214 (9th Cir. 2008) ("Rule 26(a)(2)(B) contemplates that individuals who are employed by a party and whose duties do not regularly involve giving expert testimony need not provide an expert report.").

In opposition, Defendant argues that Mr. Reaver is really a percipient witness, because he selected the subject K9 for police service, he created the training and certification program Defendant and his K9 went through, and he owns the company that provides ongoing training to Defendant and his K9. (Def.'s Opp'n MIL at 4.) Also, despite Mr. Reaver's disclosure as an unretained expert with percipient knowledge concerning Defendant and his K9's training, Plaintiff chose not to subpoena or depose him. *Id.* Plaintiff contends that she served Mr. Reaver with a deposition subpoena on December 2, 20220, but he failed to respond to the subpoena. (Pl.'s MIL at 7, Ex. 6.) Defendant contends that Plaintiff's counsel withdrew the subpoena during a telephonic meet and confer. (Decl. of Kevin Gilbert, Dkt. No. 90 at 18 ¶ 12.) Regardless, the Court need not address Plaintiff's litigation strategy, because she could have sought court intervention to compel the deposition prior to the January 8, 2021 expert discovery cutoff, but she

4

declined to do so.

Additionally, Plaintiff argues that Mr. Reaver has been retained in numerous matters through his career concerning K9 officer training and the appropriate use of police K9s. (Pl.'s MIL at 6.) The fact that Mr. Reaver has been retained by other attorneys as an expert does not mean that he is being retained or specially employed solely to testify in this instance. Indeed, Mr. Reaver's company is the independent contractor who selects and provides police K9s, as well as the K9/handler training, to the County of Alameda, including the training for Defendant and the K9 involved in this case. (Def.'s Opp'n MIL at 6.) Furthermore, at the pretrial conference, Defendant stated that Mr. Reaver will not be provided the facts of this case or be asked to opine on the reasonableness of the bite duration. Thus, Mr. Reaver is a not a retained expert and Plaintiff's motion is DENIED.

### C. Plaintiff's MIL No. 3: To exclude evidence of prior bad acts of Plaintiff Nicole Cobarrubia

Plaintiff moves to preclude Defendant from presenting evidence of Plaintiff's prior bad acts, including her criminal history and encounters with law enforcement unrelated to the subject incident under Federal Rules of Evidence 402, 403, and 404. (Pl.'s MIL at 7.) Plaintiff, however, does not identify which prior bad acts she is seeking to exclude. Instead, she only identifies the 2016 incident where her prior boyfriend allegedly told police that she told him to pretend that they were sleeping. *Id.*

Defendant opposes this motion on the grounds that Plaintiff has not identified the specific acts, and the one act she did identify was known to Defendant at the time of this incident, so it is relevant under Rule 402. (Def.'s Opp'n MIL at 9.) Furthermore, the conviction from that arrest led to the warrant that Defendant was executing at the time of this incident. *Id.* The Court finds that the 2016 incident is relevant, it is not unduly prejudicial under Rule 403, and it is admissible under Federal Rule of Evidence 404(b)(2) to prove motive, opportunity, intent, plan, and knowledge. *See Boyd v. City & Cty. of San Francisco*, 576 F.3d 938, 947 (9th Cir. 2009). At the hearing, Plaintiff raised a hearsay objection to the admissibility of the boyfriend's communication with law enforcement. For the reasons stated on the record, Plaintiff's hearsay objection is

5

overruled on the grounds that, regardless of the truth of the matter asserted, the statement was known to the deputies, including Defendant Edwards, at the time of the incident and is, therefore, admissible as to the deputies', including Defendant's, knowledge and state of mind. *See* Fed. R. Evid. 803. Moreover, the Court finds that the probative value is not substantially outweighed by unfair prejudice. *See* Fed. R. Evid. 403.

Plaintiff, however, has not made an adequate showing to provide a blanket exclusion to all evidence of Plaintiff's bad acts—indeed, she does not even provide a list of prior bad acts for which she is seeking exclusion. Notwithstanding, since the Court is generally inclined to exclude the specific nature of the bad acts that are unrelated to the use of weapons and Plaintiff's propensity to arm herself, as well as those bad acts that were unknown to Defendant at the time of the incident, the Court asked the parties to meet and confer regarding a list of prior bad acts that would be subject to exclusion, and to submit a stipulation. On September 14, 2021, the parties filed a stipulation (Dkt. No. 94), and so the Court excludes the following prior bad acts:

1. Plaintiff's currently pending charges for violating California Penal Code sections 10851 (grand theft auto) [felony], 496d(a) (receiving stolen property, vehicle) [felony], and 466 (possession of burglary tools) [misdemeanor];

2. Plaintiff's March 2, 2020, charges for violating her probation related to the Mini Safe Storage facility located at 15311 Hesperian Boulevard in San Leandro, California;

3. Plaintiff's March 27, 2009, January 11, 2016, and April 11, 2018, charges for violating California Penal Code section 484 (petty theft) [misdemeanor];

4. Plaintiff's February 11, 2003, charges for violating California Vehicle Code sections 14601.5(a) (driving on suspended license) [misdemeanor] and 20002(a) (hit-and-run) [misdemeanor]; and

5. Plaintiff's August 13, 2002, charges for violating California Vehicle Code sections 23140 (driving with a high BAC) [misdemeanor] and 20002(a) (hit-and-run) [misdemeanor].

(Dkt. No. 94 at 1.) The Court will, therefore, exclude the above criminal charges unless Plaintiff opens the door to such evidence. "[T]he concept of impeachment by contradiction permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence." *United States v. Castillo*, 181 F.3d 1129, 1132 (9th Cir. 1999). The Ninth Circuit has

6

1   held that such impeachment by contradiction is not governed by Rule 608, but by Rule 607, and

2   that Rule 607 "allows the admission of extrinsic evidence to impeach specific errors or falsehoods

3   in a witness's testimony on direct examination." *United States v. Antonakeas*, 225 F.3d 714, 724

4   (9th Cir. 2001); *see also Castillo*, 181 F.3d at 1132.  In permitting such evidence, the Ninth Circuit

5   explained:

> Direct-examination testimony containing a broad disclaimer of misconduct sometimes can open the door for extrinsic evidence to contradict even though the contradictory evidence is otherwise inadmissible under Rules 404 and 608(b) and is, thus, collateral.  This approach has been justified on the grounds that the witness should not be permitted to engage in perjury, mislead the trier of fact, and then shield himself from impeachment by asserting the collateral-fact doctrine.

*Castillo*, 181 F.3d at 1132-33 (internal quotation omitted).

It was Plaintiff's burden to identify all prior bad acts for which she was seeking exclusion in the motion in limine, and to explain why each should be excluded, but she failed to do so, so any prior bad acts to which the parties disagree will be ruled upon during the course of the trial.

Pursuant to the stipulation of the parties, the Court GRANTS IN PART Plaintiff's motion to exclude Plaintiff's prior bad acts.  For the reasons set forth above, as well as those stated on the record, the Court denies Plaintiff's motion insofar as she seeks to exclude the 2016 incident on the grounds that the probable value outweighs any prejudicial effect.

### D.     Plaintiff's MIL No. 4: Permit medical providers to testify via Zoom.

Without providing any particulars, or even identifying the witnesses, Plaintiff seeks to permit all medical providers to testify via videoconference. (Pl.'s MIL at 11.)  Defendant objects due to Plaintiff's lack of specificity. (Def.'s Opp'n MIL at 16.)  Federal Rule of Civil Procedure 43 provides that courts may, "for good cause shown in compelling circumstances and upon appropriate safeguards, permit presentation of testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43(a).

At the pretrial conference, Plaintiff's counsel explained that Dr. Amber Jones would have difficulty testifying in person, because she resides in Bakersfield, California, and has a surgery scheduled for the day after her scheduled testimony.  Defense counsel stated that he may be

willing to stipulate to Dr. Jones testifying on Zoom depending on the scope of her testimony.[3]

Accordingly, the Court DENIES Plaintiff's motion without prejudice for failure to show good cause or compelling circumstances and orders the parties to meet and confer regarding whether Dr. Jones should be permitted to testify remotely.

### E. Defendant's MIL No. 1: To exclude evidence or testimony of unrelated acts or incidents, lawsuits, or complaints against Defendant, the County or other law enforcement entities

Defendant moves to exclude evidence of testimony of unrelated incidents against him, the County or other law enforcement entities, including reference to Black Lives Matter, Oscar Grant, and George Floyd. (Def.'s MIL at 2-4.)

In response, Plaintiff stated that she did not "intend to illicit testimony or introduce evidence or argument against Defendant Edwards concerning other acts, incidents, lawsuits or complaints related to Defendant, the County of Alameda, or any other law enforcement entities that do not involve Plaintiff." (Pl.'s Opp'n MIL, Dkt. No. 91 at 2.) Thus, she is deemed to not oppose the motion, and the motion is GRANTED.

Furthermore, there is no showing that any such evidence or references would be relevant to the instant case, whereas there is potential undue prejudice if a jury finds against Defendant based on actions wholly unrelated to the December 4, 2017 incident.

### F. Defendant's MIL No. 2: To exclude or limit evidence, testimony, or argument for undisclosed damages; particularly special damages, lost wages, and lost earning capacity

Defendant moves to exclude witnesses and evidence regarding undisclosed damages. (Def.'s MIL at 4.)

First, Plaintiff affirmatively stated that she did not intend to introduce any evidence of special damages. (Pl.'s Opp'n MIL at 2.) Second, Rule 26(a) requires that a party provide "the name and, if known, the address and telephone number of each individual likely to have

---

[3] The Court is in receipt of Dr. Jones's letter, dated September 15, 2021, in which she seeks to quash the subpoena to testify at trial pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(ii). (*See* Dkt. No. 97) (erroneously cites Rule 45(d)(3)(A)(iii) as authority to quash). While Dr. Jones's letter is not a properly noticed motion, the Court is inclined to permit her to testify remotely under the circumstances, and hereby orders the parties to meet and confer in an attempt to resolve this issue without court intervention.

discoverable information," as well as "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . .." "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (internal quotation omitted). "Under Rule 37, exclusion of evidence not disclosed is appropriate unless the failure to disclose was substantially justified or harmless." *Id.* "In determining whether this sanction should be imposed, the burden is on the party facing the sanction . . . to demonstrate that the failure to comply with Rule 26(a) is substantially justified or harmless." *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008). As Plaintiff has failed to explain why her failure to comply with Rule 26(a) is substantially justified or harmless, exclusion of witnesses and evidence not properly disclosed is warranted.

Accordingly, the Court GRANTS Defendant's motion.

### G. Defendant's MIL No. 3: To limit or exclude the testimony of Plaintiff's expert Ernest Burwell

Defendant moves to exclude, or in the alternative limit, the expert testimony of Ernest Burwell on police practices. (Def.'s MIL at 9.) Should the Court decide to allow Mr. Burwell to testify, Defendant requests that he be limited to his report, and that he be precluded from testifying about his opinions that are contrary to the Court's grant of partial summary judgment. (*Id.* at 11.) By way of example, Defendant asks that Mr. Burwell be precluded from opining that "the distraction blows were excessive, the deployment of a canine at all was excessive, and that Plaintiff did not resist arrest in any way." *Id.* The Court declines to exclude all of Mr. Burwell's testimony but precludes him from furnishing opinions that contradict the summary judgment order (Dkt. No. 56). Moreover, as Defendant argues, Mr. Burwell also opines upon issues no longer relevant to this case now that the County has been dismissed, such as regarding the failure to intervene and the County's training, policies and alternative policies that could have been adopted. (Burwell Report, Dkt. No. 68, Ex. A at 14-30.) As a result, Defendant argues that Mr. Burwell be limited to the issue the Court identified for trial while excluding his opinions as to training and

policies. (Def.'s MIL at 11.)

In opposition, Plaintiff merely argues that Mr. Burwell is qualified to testify on "the field of police practices and the handling of police K9[]s." (Pl.'s Opp'n MIL at 4.)  While the Court tends to agree and will permit Mr. Burwell to testify on the reasonableness of the duration of the K9's bite-hold and the K9 use of force policy, several of the opinions furnished by Mr. Burwell must be precluded, because they contradict a prior court ruling or are gross generalities that provide little probative value. *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (The court's gatekeeping function includes "screen[ing] the jury from unreliable nonsense opinions...."). Also, the following opinions are speculative and inadmissible, and are, therefore, precluded:

1. That "many" K9 handlers "are working in the times prior to the US Supreme Court Ruling, Graham v Connor." (Burwell Report at 6.)
2. That "the supply and demand has caused dogs to be placed in service that have no business to be there." (Burwell Report at 7.)
3. "[S]ome handlers feel the need to get the dog a bite so that the dog stays proficient." (Burwell Report at 7.)
4. That "[t]he 148 P.C. charge is not a violent offence and is an abused penal code such as in this incident." (Burwell Report at 10.)

Second, Mr. Burwell opines on medical issues and issues of damages for which he has no training or experience, which are similarly precluded:

1. "[Plaintiff's] injuries resulted directly and only from a use of force that was clearly excessive." (Burwell Report at 10.)
2. That the injury Plaintiff sustained on her face was from a bite as opposed to anything else. (Burwell Report at 10-11.)
3. That Plaintiff's injuries caused disfigurement. (Burwell Report at 13.)

Third, Mr. Burwell is only permitted to opine as to the reasonableness of the bite duration due to the *Heck* bar involving the initial bite-hold and the arrest pursuant to Penal Code § 148. He is also permitted to testify about the amount of pain generally sustained during a K9's bite-hold,

10

1  and the typical reaction of a person being bitten by a police K9, but he is not permitted to testify
2  about the subjective pain sustained by Plaintiff. Indeed, the jury can base its finding of the pain
3  suffered by Plaintiff on the available non-expert evidence, namely Plaintiff's own testimony. *See*
4  *May v. San Mateo Cty.*, No. 16-CV-00252-LB, 2017 WL 2305160, at *9 (N.D. Cal. May 26,
5  2017) (limiting Mr. Burwell's testimony based on a similar expert report). Mr. Burwell is also
6  permitted to testify generally about the use of police K9s, but he may not opine that a crime was
7  not occurring, that Plaintiff was not resisting at any point in time, threatening officers or
8  attempting to evade arrest. (*See* Burwell Report at 12.) Mr. Burwell may furnish an opinion
9  regarding at what point Plaintiff may have stopped resisting arrest, if that is his opinion. Unlike
10 the plaintiff in *Hernandez v. Town of Gilbert,* there is a dispute of fact regarding whether Plaintiff
11 Cobarrubia was noncompliant for the entire duration of the bite. *See* 989 F.3d 739, 744, 746 (9th
12 Cir. 2021) (body worn camera recordings clearly show that the plaintiff was noncompliant for
13 reasons other than the dog bite).[4] For that reason, the Court denies Defendant's motion insofar as
14 it seeks to limit Mr. Burwell to his report.

15 Fourth, Mr. Burwell is precluded from offering legal opinions or conclusions (e.g., that
16 Defendant exercised "excessive force") rather than expert analysis, but he is permitted to testify
17 regarding how K9 handlers are trained, that Defendant should not have acted in the manner in
18 which he did, or that he should have done something else, and whether the duration of the bite-
19 hold was justified. *See, e.g., Rascon v. Brookins,* No. CV-14-00749-PHX-JJT, 2018 WL 739696,

---

[4] Moreover, the facts in this case are factually distinguishable from the *Hernandez* and *Mendoza* line of cases involving suspects that were undisputedly awake, actively evading arrest through flight or trying to hide, and refusing to surrender. *Hernandez,* 989 F.3d at 742-43; *Mendoza v. Block,* 27 F.3d 1357, 1358 (9th Cir. 1994). Furthermore, *Hernandez* concerned a noncompliant suspect who had resisted lesser methods of force. 989 F.3d at 744. Here, the use of the police K9 was the initial and primary use of force, and the only use of force remaining in this case. Notwithstanding, even *Hernandez* recognizes that Ninth Circuit "caselaw is clear that an officer cannot direct a police dog to continue biting a suspect who has fully surrendered and is under the officer's control. *Hernandez*, 989 F.3d at 745 (citing *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). In *Watkins,* the Ninth Circuit found that the denial of qualified immunity was proper on the issue of whether the duration of the bite-hold was excessive force even though the suspect was not handcuffed at the time the dog released its bite. 145 F.3d at 1090, 1093. Thus, Defendant's apparent position that the fact that Plaintiff was not handcuffed at the time the K9 released his bite is somehow dispositive, as to whether the force used was excessive or whether Defendant is entitled to qualified immunity, is wholly inconsistent with Ninth Circuit precedent.

at *4 (D. Ariz. Feb. 7, 2018). Mr. Burwell may not furnish an opinion that is contrary to Ninth Circuit legal authority—e.g., that merely maintaining a bite-hold is unreasonable or that maintaining a bite-hold for a certain duration is generally unreasonable.

Finally, to the extent that Mr. Burwell seeks to vouch for witnesses, those opinions are precluded:

1. "It is my opinion based on my experience that Nicole was laying on her back passive when the dog jumped on the bed." (Burwell Report at 11.)
2. Any opinions that Plaintiff was "passive" at the time of the initial bite-hold. (*See, e.g.,* Burwell Report at 11. 17.) Mr. Burwell may explain that Defendant gave the K9 a bite command, which is not disputed.
3. "The body cam video of this incident does not show Nicole trying to do any of the above mentioned Graham v Connor factors which officers are extensively taught by POST." (Burwell Report at 13.)

While the Court will permit Mr. Burwell to testify regarding the use of police K9s, he is cautioned against attempting to "weave the story his client needs." *See May v. San Mateo Cty.*, 2017 WL 2305160, at *8.

Based on the foregoing, Defendant's motion is GRANTED IN PART, and Mr. Burwell's opinion is generally limited to the use of the K9 after Plaintiff ceased injuring the K9. Additionally, Mr. Burwell is permitted to opine as to the County's policies on the use of police K9s as a method of force.

**H.     Defendant's MIL No. 4: To preclude evidence, testimony or argument related to post-incident review by the County of Alameda**

Defendant moves to exclude evidence, testimony or argument related to any post-incident review by the County of Alameda. (Def.'s MIL at 17.) Plaintiff does not intend to introduce such evidence, and so is deemed to not oppose this motion. (Pl.'s Opp'n MIL at 5.) Even so, the introduction of post-incident review evidence, testimony, and argument is excluded by Federal Rules of Evidence 403 and 407. *See Maddox v. City of Los Angeles,* 792 F.2d 1408, 1417-18 (9th Cir. 1986) (post-incident disciplinary proceedings properly excluded as prejudicial under Rule 403

and as subsequent remedial measure under Rule 407).

Accordingly, Defendant's motion is GRANTED.

## I. Defendant's MIL No. 5: To preclude Reptile/Golden Rule arguments, evidence and testimony

Defendant moves for an order precluding Plaintiff from presenting, referencing, or otherwise communicating, arguing, or suggesting to the jury that jurors should reach a verdict by placing themselves in the position of either the defendant or the plaintiff. (Def.'s MIL at 19.) Plaintiff argues that the Defendant's motion is overbroad, as it seeks to improperly limit Plaintiff's arguments. (Pl.'s Opp'n MIL at 5.)

As discussed at the hearing on this motion, the Court expects counsel for all parties to refrain from engaging in improper closing argument, and it will not categorically prohibit the particular trial strategy or form of argument that Defendant refers to as "reptile" theory. *See, e.g., McNally v. Riis*, No. 18-CV-1150 JLS (AGS), 2020 WL 209141, at *7 (S.D. Cal. Jan. 14, 2020) (declining to exclude such arguments).

Thus, Defendant's motion is DENIED.

## J. Defendant's MIL regarding scope of Dr. Amber Jones's testimony

Dr. Amber Jones is the surgeon who treated Plaintiff in the emergency room immediately following the incident. Defendant filed an objection to the scope of Dr. Jones's testimony alongside his objections to witness Gregg Stutchman and Plaintiff's exhibits, but the Court will construe the objection as a motion in limine. (Dkt. No. 88 at 1.)

Defendant argues that Plaintiff disclosed Dr. Jones only as a non-retained treating doctor and did not provide an expert witness report. *Id.* A non-retained treating doctor is properly limited to opinions that "were formed during the course of treatment." *Goodman v. Staples*, 644 F.3d 817, 826 (9th Cir. 2011). If a plaintiff asks a treating doctor to opine on matters beyond the scope of the treatment they rendered, an expert report is required. *Id.* Since Plaintiff failed to provide an expert report for a treating doctor, under Federal Rule of Civil Procedure 37(c)(1), Dr. Jones may not be used to supply evidence outside of the treatment that she performed unless Plaintiff establishes that the failure was substantially justified or is harmless. *Goodman,* 644 F.3d at 826.

13

Plaintiff has not done so. Thus, since Dr. Jones was not involved in any subsequent treatment, rehabilitation or recovery Plaintiff may have had, Defendant's motion is GRANTED, and Dr. Jones's testimony is limited to the surgery she performed. Plaintiff is not permitted to ask Dr. Jones to opine upon causation, prognosis, mitigation of damages, recovery, or rehabilitation unless Dr. Jones formed those opinions as part of the treatment she was rendering. Dr. Jones may testify to what she saw, which may include an opinion as to the severity of the bite, but she should generally avoid comparisons to other dog bites that she has seen.

### IV.   PROPOSAL TO BIFURCATE TRIAL

While Defendant did not file a formal motion to bifurcate, the Court denies Defendant's proposal to bifurcate the trial into liability and damages phases. (JPS at 16.) Given that Plaintiff is precluded from introducing evidence of special damages and damages related to the distraction blows, it is not economical or efficient to bifurcate the trial into two phases.

### V.   JURY INSTRUCTIONS

The Court has reviewed the parties' joint and individual submissions. The Court will provide the parties with the proposed preliminary jury instructions prior to the start of trial, and the parties will have an opportunity to be heard before the instructions are finalized and read to the jury. Similarly, the Court will provide the parties with the proposed final jury instructions prior to the conclusion of the trial, and they will have an opportunity to address them before finalization.

IT IS SO ORDERED.

Dated: September 17, 2021

_____
KANDIS A. WESTMORE
United States Magistrate Judge